### TITUS v WALLICK

Ohio Appeals, 2nd Dist, Franklin Co

No 2750. Decided Nov 30, 1937

Byron E. Ford, Columbus, Thomas I. Sheridan, Lewis F. Glaser, Aaron Frank, for plaintiff-appellant.

Butler & Summer, Columbus for defendant-appellee.

## OPINION

By HORNBECK, J.

This appeal on questions of law is prosecuted from a judgment in behalf of defendant. In the trial court the plaintiff's action was for judgment against defendant on a judgment of the Supreme Court of New York of date May 1, 1934, in favor of the plaintiff and against the defendant in the sum of $389,103.21.

The answer asserted three defenses: (1) that the judgment sued upon was not responsive to the issues tendered by the pleadings; (2) that the plaintiff is not the real party in interest; (3) that the judgment in the New York Court was procured by fraud practiced upon the court and upon the defendant in that the plaintiff was not the real party in interest and suppressed and withheld this fact from the New York court.

The parties waived a jury, submitted the cause to the trial judge, who found that the defendant had failed to sustain the first defense, but entered judgment in his behalf on the second and third. The trial court upon request also made separate findings of fact and law.

There are fourteen errors assigned, which may be grouped under the general headings that the judgment is contrary to law and against the manifest weight of the evidence; the court erred in admitting certain evidence; in the conclusions of law and fact and in refusing to find "whether a re-assignment of the claim (upon which the judgment in New York was rendered) was made by Walter L. Titus to Edward H. Titus on December 1, 1925."

The action in New York was instituted on December 22, 1925. It was twice tried in the lower courts, five times in the Appellate Division of the Supreme Court and once in the Court of Appeals, with the result that there is a voluminous record, much of which was eventually offered in the trial of the cause in this state.

The suit in New York was based upon a claim by the plaintiff that he was the owner of 250 shares of stock of the Secor Hotel Company of Toledo, Ohio, which were withheld from him by the defendant.

On March 31, 1924, plaintiff assigned his claim against the defendant to his brother, Walter Titus. On December 1, 1925, a short time before institution of the New York action, Walter Titus executed and delivered to the plaintiff an instrument in writing, designated an article of agreement.

After the judgment in behalf of plaintiff in New York, London I. Wallick, a brother of the defendant, who claimed to be entitled to a share in the proceeds of the judgment, instituted an action in New York and interposed therein a motion seeking an injunction pendente lite restraining the plaintiff from disposing of or collecting any of the money due on the judgment. Plaintiff herein asserted a defense to this suit and in support thereof tendered and filed an affidavit of date August 17, 1934, which set out at considerable length the history of the transactions between the plaintiff and the defendant and between London I. Wallick and the plaintiff relative to the subject matter of the action upon which judgment had been entered for the plaintiff and among other things the following appeared:

"I told him (London I. Wallick) at that time (Nov. 23, 1925) that I had already assigned any interest in the proceeds of said action against Lou C. Wallick to Walter L. Titus and Emilie F. Titus."

"The plaintiff's application for an injunction pendente lite should be denied. Prior to my execution of the instrument of November 23, 1925, (a written agreement between plaintiff and London I. Wallick) I assigned my interest in my claim against Lou C. Wallick to Walter L. Titus, my brother, and Emilie I. Titus. The plaintiff herein knew of this assignment before the instrument of November 23, 1925, was executed. It is respectfully submitted that it does not lie within the jurisdiction of this court to now enjoin what has already been accomplished."

Matter in parentheses ours.

The trial court's opinion is before us. The conclusion is there reached that the plaintiff, in the suit in New York and in the action here, was not the real party in interest and that the judgment in New York was secured by fraud practiced by the plaintiff upon the court and the defendant, in suppressing the fact that he was not the real party in interest.

The voluminous briefs of counsel are directed to every question that arose in the trial of the cause. We can not, within reasonable limitations, discuss all of the authorities cited and discussed at length. We have, however, given attention to all propositions advanced and have considered the cases cited.

The question for our determination is: Did the trial court have support for either or both of the conclusions which were reached.

With the finding that the plaintiff was not the real party in interest in the actions in Ohio and in New York we are in accord upon a fair consideration of the status of the plaintiff, his brother and the defendant. The question respecting the fraud practiced upon the court and the defendant in New York, wherein the judgment was rendered for the plaintiff and against the defendant, and particularly the right to assert it as a defense to the action in Ohio, is more difficult. We shall discuss the propositions in order.

The plaintiff originally was the sole owner of the claim against the defendant, upon which the action in New York was predicated. By the assignment to his brother Walter Titus, the plaintiff relinquished any and all interest which he had in the claim. Under the first assignment, then, the sole and only right in any manner to collect the claim from the defendant was in Walter Titus. If the rights of the parties are fixed by the instrument termed "Article of Agreement" and Walter Titus transferred any such legal or equitable interest or both in his claim to the plaintiff as would entitle him to maintain an action in his own name in New York, then he was a proper party in interest there and a proper party in interest here. This is true without respect to the assertions of fact made in the affidavit of plaintiff in the injunction proceeding in New York, because the plaintiff, though he may have misinterpreted the import of the agreement, could not change its effect in law.

The agreement, after preliminary recitations setting forth the nature of the claim and its former assignment by plaintiff to his brother, Walter, recites that said assignment was delivered upon the oral understanding that Walter would use any funds that might be derived therefrom to pay off and discharge certain indebtedness of Edward, later set out. It is stated that Edward wishes to institute an action against Lou C. Wallick to recover stock and that Walter is willing to re-assign the claim to Edward upon terms and conditions thereafter stated. Consideration of $1.00 is acknowledged. Then follow the conditions under which the re-assignment is made, as follows:

1. Walter sells, assigns and transfers all his right, title and interest to the claim against Lou C. Wallick and all his right, title and interest to 250 shares of the capital stock of the Secor Hotel Company to Edward Titus.

2. Walter appoints Edward his true and lawful attorney irrevocably for him and in his name and stead but for Edward's benefit to sell, assign, transfer, set over, pledge, compromise or discharge the whole, or any part, of said claim, and to * * * collect", receive and sue for said stock or for any moneys which may grow due, upon said claim, and to substitute one person or more with like powers * * *.

3. Edward agrees that he will receive, as the property of Walter, any stock certificates, checks, drafts or money applicable to said claim, which shall at any time come into the possession or control of Edward and will immediately endorse, transfer and deliver same to Walter to have and to hold the same and every part thereof for the following uses and purposes:

(a) To pay all expenses incurred in con-

nection with the collection of claims.

(b) To repay one-half of the balance thereof to Emilie F. Titus * * *.

(c) To reimburse Walter for one-half of any and all m̃ṽ vṣ ñ ẽ ofore or hereafter paid out by him in discharging debts and liabilities incurred by James L. Titus, * * *.

(d) To pay in full, if the residue of the proceeds is sufficient, principal and interest on a note for $11,361.25, payable to Margaret G. Ttitus.

(e) To p. y all indebtedness due or to become due i· m Ẽdward to Walter.

(f) To pay to Edward the surplus remaining after payment and discharge of obligations theretofore recited.

If this instrument stopped with the subject matter of Condition 1, clearly it would be a complete re-assignment. That part which is contained in Condition 2 is difficult of understanding. The first part thereof is clearly a designation of power of attorney to Edward from Walter and is unqualified and all that is to be done is to be done by the attorney, Edward, for and on behalf of Walter. Then, notwithstanding the unqualified language just discussed, follows the provision that the action of Walter in selling, assigning or transferring the claim is for Edward's benefit. The third heading provides that any avails of the settlement of the claim which come into the possession of Edward, he shall receive for Walter and be immediately turned back to Walter. The only reconcilable construction that can be put upon this instrument up to this point is that Walter gave Edward power of attorney to collect in any manner the claim which Walter owned and immediately upon collection to turn over the proceeds of the collection to Walter for the purposes thereafter set forth in the agreement. The only interest that Edward had by agreement in the proceeds of the judgment after payment of said proceeds to Walter was a contingent right to receive a share thereof after all payments were made, as provided in (a), (b), (c), (d) and (e), though it is true the payments in these sub-headings were to be made to liquidate the indebtedness of Edward. Upon this whole instrument, then, over and beyond the power of attorney granted to Edward he had no interest whatever except the contingency provided for in (f). The action instituted in New York and in Ohio did not proceed as one wherein Edward was plaintiff as attorney for Walter as provided in Condition 2 of the agreement, but in his own name and right. The

power of attorney will not support the action in the form in which it has been prosecuted, nor was the contingent interest of Edward such is that it would authorize him in his own name to be a proper party plaintiff.

Secs 11241 and 11244 GC, are, insofar as they relate to the instant action, substantially the same as §210 of the Civil Practice Act of the State of New York, which provides that:

"An action must be prosecuted in the name of the real party in interest except that * * * a trustee of an express trust, * * * may sue without joining with him the person for whose benefit the action is prosecuted."

An in Ohio the exception has been in Brown v Ginn, 66 Oh St 316, which holds that:

"In order to constitute one a trustee of an express trust within the meaning of the statute, the right and duty to bring the action must be incidental to the other powers and duties under the assumed trust, and the authority must not be confined simply to the bringing of an action to collect the subject of the contract which purports to create the trust, and to pay the net proceeds over to the assignor."

See also **Hadden v Rowe, 3 O. Opinions, 68 (130 Oh St 10.)**

To like effect is Spencer v Standard Chemicals and Metals Corporation, 143 N. E., 651, (237 N.Y., 479), Syllabus 1:

"Under Code Civ. Proc. §§111, 113 (Civil Practice Act, §210), assignee must have legal or equitable title to thing assigned to sue in his own name as real party in interest, irrespective of consideration paid, purpose of assignment, or use to be made of proceeds collected."

Andrews, Judge, in the opinion at page 652 quotes from Cumings v Morris, 25 N. Y., 625:

"The real party in interest has been defined by this court: 'If, as between the assignor and the assignee, the transfer is complete, so that the former is divested of all control and right to the cause of action, and the latter is entitled to control it and receive its fruits, the assignee is the real party in interest'."

But it is claimed that the Court erred in refusing to find whether a re-assignment of the claim (upon which the judgment in New York was rendered) was made by Walter L. Titus to Edward H. Titus on

December 1, 1925. The Court made no specific finding in the separate findings of fact and law on this matter though the agreement was discussed at length and construed in the opinion.

There can be no dispute as to the execution of the article of agreement at the time and place and in the manner appearing in the record. Its effect is the subject of dispute. It is determined in the findings of fact that the statements in the affidavit as to the assignment by Edward to Walter were made and at the time of the institution of plaintiff's suit in New York he had no such interest in the claim sued upon as to be the real party in interest. There is nothing in the record which will permit the inference that there has been any change in the statuts of plaintiff since the making of the affidavit. As we understand it, the Court further held that if the plaintiff had, under the agreement, such an interest as would have authorized him to institute the suit, it did not establish the claim that he was the proper party plaintiff because having taken the position in his affidavit that he had no such right which may have been based upon facts not appearing in the record, and having failed at any subsequent time to deny the subject matter of the affidavit, it should be accepted as fixing the true relationship of the parties when the action was instituted in New York. In this conclusion we do not concur. Having found that the statements in the affidavit were true, it must be accepted that the only specific reference to an assignment was as to the the one made prior to November 23, 1925. This could only relate to the assignment of March 31, 1924. This time is fixed by the language of the defendant,

"The plaintiff knew of this assignment before the instrument of November 23, 1925, was executed."

The last quoted part of the affidavit,

"It is respectfully submitted that it does not lie within the jurisdiction of this court to now enjoin what has already been accomplished,"

is but a conclusion of the affiant that his s atus was fixed as of date March 31, 1924, and not by any subsequent act. The article of agreement having been executed subsequent to November 23, 1925, and before suit would support the right of plaintiff to institute his suit in New York if it clothed him with authority so to do. But the effect of the article of agreement was not to be determined by a finding of fact but

by judicial construction as a matter of law. At law it bears but one construction and that is against the claim of the plaintiff that he was the real party in interest in the action in New York. If the findings of fact made are correct and supported by the record, then the failure to make specific finding of the effect of the article of agreement wou'd not be prejudicial to the plaintiff, if the judgment reached was in accord with the findings properly made. It matters not whether in the statement in the affidavit, plaintiff correctly or incorrectly interpreted his status under the article of agreement. If the former, then, though stating the truth, it was at variance with his claim in the New York suit. This was the view taken by the trial court and is a proper inference to be drawn.

It is further urged that the affidavit was not properly admitted in evidence but if admissible should not be construed to amount to an estoppel and preclude the plaintiff from an explanation of the language therein, which the court construed as determinative that the plaintiff was not the real party in interest. No case is cited supporting the proposition that the affidavit is not admissible and all of the cases cited by both parties on the subject support its admissibility.

The claim that the court considered the affidavit as conclusive and binding upon the plaintiff and that no explanation would be permitted is not well made. True, the judge cited some cases, the tenor of which is to effect that the statements in the affidavits were conclusive against the plaintiff but he did not rely upon this rule but went further and held that if explanation was proper none was forthcoming.

In the view of the trial court it is immaterial whether the statements in the affidavit amounted to estoppel or were merely admissions of evidential value only. We are inclined to the view that the facts set forth in the affidavit were subject to explanation. But the plaintiff, though cognizant of the purpose for which the affidavit was introduced, namely, to support the second and third defenses of the answer, did not, by deposition or by appearance as a witness at the trial, attempt to explain the subject matter of the affidavit which was under consideration. On the contrary, the plaintiff stands upon the record and urges that his position as set forth in the affidavit is not inconsistent with his right to maintain the action in New York and the action here.

But it is said that plaintiff was not given

opportunity to explain the affidavit. We find no support whatever in the record for this position. The trial court at all times indicated a willingness to extend to the parties full opportunity to produce any proof which was available. The plaintiff was put on notice that· the affidavit might be accepted in evidence. If so, it should have been apparent to the plaintiff that it would be employed as supporting the second and third defenses of the answer. It then became the obligation of the plaintiff to meet this possible development of proof.

The trial court committed no prejudicial error in holding that the plaintiff was neither in Ohio nor in New York a real party in interest in the respective actions here and there.

The next major question and the most difficult one is whether or not the statement made by the plaintiff in the affid in the collateral injunction proceedin' New York disclosed the practice of suc.. fraud against the court and the defendant in the original action as would preclude the maintenance of the instant action upon the judgment in New York.

If the plaintiff is charegable with such fraud as that it could be set up successfully against the judgment in New York, where it was rendered, it may be set up in Ohio to defeat the rendition of a judgment for the plaintiff here. 34 C. J., 1126, 1153.

"All defenses which are admissible against a judgment where it was pronounced are equally admissible in actions upon it in another state." Freeman on Judgments (5th Edition) Third Volume,· page 2992. **Pelton v Pelton, 13 O., 209; Arndt v Arndt, 15 O., 33; Armstrong v Armstrong, 117 Oh St 558.**

Freeman on Judgments fully and comprehensively considers fraud as a ground of attack on judgments of sister states at pages 2890, 2891 and 2892, Third Volume:

"But in view of the requirement that a sister state judgment shall be given the same effect as it has where rendered, the question whether it is collaterally inpeachable for fraud, except where the matter is jurisdictional, ought to depend entirely upon whether such an attack may be made in the state of its rendition; and this is what some of the cases hold. If it is impeachable there for fraud, it is to the same extent impeachable elsewhere."

"While the United States Supreme Court has indulged in dicta to the effect that such a judgment may be attacked for fraud, as well as lack of jurisdiction, other dicta of the same court are to the contrary. and some of its decisions contain the general statement that the plea of fraud is not available as an answer to an action on a judgment. We apprehend, however, that these latter decisions are inapplicable in those states in which the distinction .between law and equity is attempted to be abolished, and equitable as well as legal defenses are, when properly pleaded, admissible in actions at law."

And the same work at page 2895:

"Hence relief can not ordinarily be had in another state on the ground of perjury and conspiracy in prosecuting the action in which the judgment was given, nor because of any fraud which might have been urged against the maintenance of the former action. The fraud which may be shown is fraud in the procurement of the judgment or decree rather than fraud in the cause of action. As to what constitutes such fraud the rule is doubtless the same as is applied where equitable relief on this ground is sought against it in an independent action."

Cases are cited which support the text.

We are cited to Phillips v Griffin, 236 App. Div. (N.Y.) 206, and particularly page 211; Boston & Maine R. Co. v. D. & H. Co., 268 N. Y., 382, 391; Jacobwitz v Herson, 268 N. Y., 130; the Matter of Holden, 271 N. Y., 212; U.S. v Throckmorton, 98 U.S. 61; 15 R.C.L., 762; Wright v Saltmarsh, 50 Pac. (2d), 694, which generally go to the proposition that under the full faith and credit clause of the federal constitution a judgment of a sister state may only be assailed for want of jurisdiction over either the person or the subject matter or for extrinsic fraud, "the effect of which prevents a party from having a trial or from presenting the merits of his case to the court. It can exist only in such cases where it operates to keep a party away from court by reason of a promise of compromise, or where a party is kept in ignorance, * * * or where an attorney sells out his client's interest, or where there is corruption of or collusion with the court". This latter statement is quoted from U. S. v Throckmorton, supra.

We have searched the authorities cited by both parties in vain for any set of facts paralleling those found in the instant case and our independent research affords no case directly in point. In U. S. v Throckmorton, supra, decided in 1878, there was no question touching fraud in suppression

of the infirmity of a party. The court had no occasion to give consideration to such a situation and necessarily confined its observations to the law as applied to the facts there appearing. The fraud upon which the plaintiff sought a decree setting aside and declaring the judgment to be void related to the subject matter of proof respecting the merits of the case. There has been no exception to the rule that a judgment recovered by means of false and fraudulent testimony of the prevailing party or other witnesses as to subject matter at issue is no ground of defense to an action upon the judgment or to enjoin its enforcement. 34 C.J., 1153; Pomeroy Equity Jurisprudence, Vol. 5, page 4683.

In Matter of Holden, supra, one Nelson had been awarded a sum of money as the owner of a 5/6 interest by virtue of assignments from the owner of certain property which had been condemned by the City of New York. Thereafter, a proceeding was instituted to vacate and set aside the order directing the payment to Nelson upon the claim that Nelson's assignor had procured the assignments from the unknown owners by fraud and that this constituted a fraud upon the court. The court there found that the fraud which was asserted was between the original parties in some remote transaction; that the assignee was the legal owner of the claims assigned; that the validity of the assignments could not be asserted in the manner attempted and the relief sought was denied. The status of Nelson, with legal title to the subject matter of the assignments upon which his right of action was predicated, is quite different from the status of the plaintiff here, as found by the trial court.

In Martin Corley, etc., v N. Y. and Harlem R. R. Co., (N.Y.), 12 App. Div., 409, at page 410 and 411 it is said:

"On the ground of fraud practiced upon the court and jury during the trial, the judgment should be set aside and a new trial granted. It was said in Ward v Town of Southfield (102 N. Y., 287) by Earl, J.: 'A party defeated in a litigation may appeal from the judgment or move for a new trial, and, in a proper case, to vacate and set aside the judgment. These remedies are generally ample to protect all parties. But where there is fraud not in the subject of litigation, nor in anything which was involved in the issue tried, but fraud practiced upon a party, or upon the court during the trial, or in prosecuting the action, or in obtaining the judgment may be attacked collaterally and on account thereof set aside and vacated.' This is a case of 'fraud practiced upon a party * * * during the trial'; and if it is ground for collateral attack, it is certainly ground for setting aside the judgment in the same action, as the Ward case plainly indicates." See also Bartges v O'Neil, 13 Oh St 72, 76; Board of Education v Guy, 64 Oh St 434, 445 and 447, at end.

If the formal sworn statements in the affidavit of the plaintiff were true on the motion for injunction pendent lite in the London Wallick suit in New York then clearly, the plaintiff was without right or authority to institute the suit in New York against the defendant. The trial judge was well within his province in finding that the statements in the affidavit were true and, likewise, that the plaintiff at all times, from the beginning of the suit against the defendant and during its prosecution, knew of his infirmity as a party plaintiff.

Plaintiff's assertions in the affidavit may have been based upon an appreciation of his rights under the article of agreement, viz., that they were no greater nor less than under the assignment to his brother, or they may have been made with the purpose of withholding any rights which plaintiff may have believed he possessed by virtue of the agreement. Whatever motivated the plaintiff to say what he did in the affidavit, the purpose and effect of his position in the action against the defendant in New York is the same.

It is our judgment that the trial court properly applied the law in the determination that the plaintiff suppressed and concealed from the court and from the defendant the fact that he was not a proper party plaintiff and the real party in interest in the action against the defendant in New York, and in finding that such conduct was extrinsic fraud in prosecuting the cause to judgment, which supported the third defense of the answer.

It is further claimed by the plaintiff that the facts upon which the trial court predicated the finding of fraud against the plaintiff were known or should have been known to the defendant during the progress of the litigation in New York and that it is too late to assert them now. A consideration of the record on this question does not support the claim of the plaintiff.

The judgment will be affirmed.

BARNES, PJ, and GEIGER, J, concur.